IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WORTH COLLECTION, LTD.,<br>        Debtor | Chapter 7<br>Case No. 20-10337 (BLS) |
| DOUGLAS T. TABACHNIK, in his capacity as the Chapter 7 Trustee of the bankruptcy estate of The Worth Collection, Ltd.,<br><br>            Plaintiff,<br>    v.<br><br>NEW WATER CAPITAL GP, LLC, *et al.*,<br><br>        Defendants. | Adv. Pro. No. 23-50320 (BLS)<br>D.I.'s 38, 39, 45, 48 |

## MEMORANDUM OPINION DENYING
## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT[1]

Douglas T. Tabachnik, in his capacity as the Chapter 7 Trustee of the Worth

Collection, Ltd., filed this adversary proceeding against New Water Capital GP,

LLC and related entities.[2]  After the Court granted the Defendants' motion to

dismiss Counts I, II and III of the original complaint,[3] the Trustee filed an Amended

Complaint.[4]  Before the Court is the Defendants' Motion to Dismiss the Amended

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334(b). These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F), (H) and (O).  Venue is proper in this district under 28 U.S.C. § 1409(a).

[2] The Defendants in this adversary proceeding are New Water Capital GP, LLC; New Water Capital, L.P.; New Water Capital Partners, L.P., NWC Worth Collection Holdings, LLC; Worth Investment Holdings, LLC; and Worth Collection Intermediate Holdings, LLC (the "Defendants").

[3] Adv. Docket Nos. 29, 30 (the "Prior Dismissal Opinion").  The Opinion and Order allowed the Trustee to file an amended complaint.

[4] The Amended Complaint is filed at Adv. Docket No. 36.

Complaint for failure to adequately plead claims for avoidance of preferential and fraudulent transfers, as well as claims for substantive consolidation, piercing the corporate veil and collapsing of transactions. For the reasons set forth below, the Court will deny the Defendants' Motion to Dismiss.

BACKGROUND

This Chapter 7 case was commenced by the filing of an involuntary petition on February 14, 2020, against The Worth Collection, Ltd. (the "Debtor"). The petitioning creditors were inventory suppliers or service providers to the Debtor's retail clothing sale business. On October 23, 2020, about eight months after the filing of the voluntary petition, the putative debtor filed an answer.[5] Another five months passed before the entry of an order for relief on March 24, 2021.[6] Three months later, on June 9, 2021, Douglas Tabachnik was elected by the creditors to serve as the Chapter 7 Trustee.[7]

The Trustee has filed several adversary proceedings asserting claims arising out of a series of leveraged buy-out transactions undertaken by the Debtor and related entities in September 2016 (the "LBO Transaction"). A description of the factual allegations regarding the LBO Transaction was included in the Prior Dismissal Opinion. The Court presumes the parties are familiar with the

---

[5] Main Case Docket No. 40. The docket indicates that there were no fewer than fifteen stipulations extending the time for the putative Debtor to answer or otherwise respond to the involuntary petition.

[6] Main Case Docket No. 53.

[7] Main Case Docket No. 87.

allegations in the Amended Complaint and thus will not repeat them here except to the extent necessary for the Court's ruling today.

In summary, the Complaint alleges that the LBO Transaction loaded the Debtor with "enormous and unsustainable loan obligations" of more than $25 million in new debt and encumbered all of the Debtor's assets, while funneling the proceeds of that debt to others, including the Defendants.[8]  As a result, the Complaint alleges that the Debtor was left with just over $1 million in cash, which was "grossly insufficient" to cover its operating costs and its post-LBO debt obligations.[9]  Ultimately, the Debtor's non-insider and unsecured creditors were left holding the bag.[10]  The Trustee has filed adversary proceedings, including this one, to avoid and recover as fraudulent transfers the payment of over $39.9 million to the Debtor's Former Equity Holders, as well as other fees and payments made as part of the LBO Transaction.[11]  This Amended Complaint also includes a claim to avoid and recover preferential transfers made to an alleged "insider" of the Debtor within the year prior to the filing of the Bankruptcy Petition.

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and must determine whether, under any reasonable

---

[8] Amended Compl. ¶ 18.
[9] Amended Compl. ¶ 19.
[10] Amended Compl. ¶ 20.
[11] Amended Compl. ¶¶ 88-97.  The term "Former Equity Holders" is defined in paragraph 31 of the Amended Complaint.

reading of the complaint, the plaintiff may be entitled to relief."[12]  "Without a
sufficient factual predicate, a complaint supported merely through the formulaic
recitation of the [statutory] factors and conclusory allegations will not survive a
motion to dismiss."[13]

The Supreme Court has instructed that a pleading must nudge claims "across
the line from conceivable to plausible."[14]  "A claim has facial plausibility when the
pleaded factual content allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."[15]  The determination is a context
specific task, drawing on the reviewing court's judicial experience and common
sense."[16]

DISCUSSION

1.    Counts I, II and III.

The Prior Dismissal Opinion determined that the Complaint did not include
sufficient detailed factual allegations to support the claims asserted in the first
three counts of the Complaint.  The Amended Complaint corrects the deficiency by
adding specific factual allegations to support the claims for Count I (substantive

---

[12] *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018).
[13] *Miller v. Easy Star Records (In re DA Liquidating Corp.)*, 622 B.R. 172, 176 (Bankr. D. Del. 2020) (citing *In re Liquid Holdings Grp., Inc.*, No. 16-10202 (KG), 2018 WL 6841351, *3 (Bankr. D. Del. Nov. 14, 2018)).
[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[15] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).
[16] *Ashcroft*, 556 U.S. at 679.

consolidation of the Worth Entities[17]),[18] Count II (piercing the corporate veil among the Worth Entities),[19] and Count III (collapsing the transactions association with the LBO Transaction).[20] "In deciding whether to 'collapse' a series of transaction into one integrated transaction, the issue is not whether there was common ownership on both sides of the transaction or whether the transfer was a stock or an asset sale, but rather whether there was an overall scheme to defraud the estate and its creditors by depleting all the assets through the use of a leveraged buyout."[21]

The cumulative effect of the added factual details in the Amended Complaint, together with factual allegations in the original complaint, now provides a basis to support the claims in Counts I, II and III.  The Court concludes that the combined old and new allegations, with all inferences arising therefrom viewed in the light most favorable to the Plaintiff, now provide sufficient facts to "nudge" the claims across the line from conceivable to plausible and so meet the pleading standard articulated in *Iqbal* and *Twombly*.[22]

2.    <u>Count IV and V – Avoidance and Recovery of Preferential Transfers to NWC under 11 U.S.C. §547</u>

The Amended Complaint alleges that New Water Capital, L.P. ("NWC"), an "insider" of the Debtor, received avoidable preferential transfers in the aggregate

---

[17] The "Worth Entities" are defined in the Amended Complaint as including the Debtor plus three entities formed by New Water Capital Partners, L.P. ("NWCP") allegedly for the sole purpose of consummating the LBO Transaction: (i) NWC Worth Collection Holdings, LLC ("NWCWCH"); (ii) Worth Investment Holdings, LLC ("WIH"); and (iii) Worth Collection Intermediate Holdings, LLC ("Worth Intermediate").  Amended Complaint, ¶ 120.

[18] *See, e.g.,* Amended Complaint ¶¶ 115-124; ¶¶ 202-204.

[19] *See, e.g.,* Amended Complaint ¶¶ 214-215; ¶¶ 217-220.

[20] *See, e.g.,* Amended Complaint ¶¶ 72-170.

[21] *Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC)*, 321 B.R. 128, 138 (Bankr. D. Del. 2005).

[22] *Ashcroft*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 570).

amount of $100,099.03.  NWC argues that Count IV must be dismissed because it mechanically recites the elements of a preference claim and fails to allege facts that: (i) identify the alleged antecedent debt, (ii) demonstrate that NWC is an "insider" of the Debtor, or (iii) demonstrate that the transfers were made by the Debtor or were transfers of the Debtor's property.

To survive a motion to dismiss, the complaint must assert a plausible preference claim which includes: (a) identification of the nature and amount of each antecedent debt, and (b) identification of each alleged preferential transfer by (i) date of the transfer, (ii) name of the debtor/transferor, (iii) name of the transferee, and (iv) the amount of the transfer.[23]

The Defendants claim the Amended Complaint fails to identify the antecedent debt, citing to ¶ 259.  Although ¶ 259 recites only the statutory requirement of an antecedent debt, other paragraphs (¶¶ 83-84) describe the Consulting Agreement between NWC and Worth Intermediate. Exhibit A to the Amended Complaint provides additional information about the dates and amounts of the alleged preferential transfers.

The Defendants also argue that the alleged facts establish only a relationship between NWC and Worth Intermediate, not the Debtor.  However, the claim incorporates prior allegations in the Amended Complaint including the claims for substantive consolidation, piercing the corporate veil and collapsing of the LBO Transactions.  When considered at this stage of the proceeding and drawing

---

[23] *DA Liquidating Corp.*, 622 B.R. at 176; *Insys Liquidation Trust v. McKesson Corp. (In re Insys Therapeutics, Inc.)*, 2021 WL 3083325, *3 (Bankr. D. Del. Jul. 21, 2021).

inferences from those allegations in the light most favorable to the Plaintiff, the Amended Complaint contains sufficient factual allegations to support a plausible claim that the NWC's Consulting Agreement relationship included the Debtor and transferred the Debtor's property.

Because the alleged preferential transfers occurred outside the usual 90-day preference period, but within one year "insider" preference period, the Plaintiff also must allege that NWC is an insider of the Debtor.[24]  The Defendants argue that the Amended Complaint fails to allege facts demonstrating that NWC was an "insider," especially because there are no facts alleging NWC exercised control over the Debtor.[25]  In response, the Trustee relies upon the broad definition of "insider" in Bankruptcy Code § 101(31)(E), which includes an "affiliate, or insider of an affiliate as if such affiliate were the debtor."  The Bankruptcy Code's definition of "affiliate" means an entity that "directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor."[26]  The

---

[24] 11 U.S.C. §547(b)(4)(A) and (B).

[25] The Defendants point out that paragraph 256 of the Amended Complaint states that "NWC was a *claimant* of the Debtor at the time of each NWC Preferential Transfer by virtue of being an equity holder of the Debtor."  In his answering brief to the Motion to Dismiss (footnote 4), the Trustee acknowledges a typographical error because the allegation was intended to state that NWC was an *insider* of the Debtor.  The Defendants argued that a typographical error would reflect a typing slip-up (such as typing 2012 instead of 2011), and the Trustee's attempt to replace the word "claimant" with "insider" is an improper attempt to amend a complaint through briefing.  However, the Court finds the mistake to be a harmless error since other allegations in the Amended Complaint provides notice to the Defendants that the Trustee alleges NWC was an insider of the Debtor.  *See* Amended Complaint ¶¶ 86, 257.

[26] The complete definition of "affiliate" in Bankruptcy Code § 101(2) provides:
(2) The term "affiliate" means –
    (A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities--
        (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
        (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

Trustee argues that NWC indirectly holds all of the Debtor's stock through its affiliation with entities forming a chain of parents and subsidiaries that hold 100% of the Debtor's stock.  The Amended Complaint alleges:

> 98.    New Water[27] formed three (3) entities specifically and with the sole purpose of consummating the LBO Transaction (collectively, the *"Debtor Affiliates,"* and together with the Debtor, the *"Worth Entities"*): (i) NWC Worth Collection Holdings, LLC *("NWCWCH")*, the master vehicle and entity wholly owned by NWCP; (ii) WIH, an entity wholly owned by NWCWCH, and (iii) Worth Intermediate, the "purchaser" in the LBO Transaction, an entity wholly owned by WIH.
>
> ….
>
> 101.    Worth Intermediate held all shares of the Debtor, making it the owner of the Debtor.

Other courts have determined that additional allegations of control over the Debtor are not required so long as the plaintiff alleges that "control" exists under the relevant statutory definitions; that is, an affiliate directly or indirectly controlling 20% of the Debtor's voting shares.[28]  The Defendants are correct that the Amended Complaint does not allege that the NWC directly holds equity in the

---

(B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities--

(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

(C) person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or

(D) entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement.

[27] "New Water" is defined in the Amended Complaint as New Water Capital GP, LLC ("NWCGP"), NWC, and New Water Capital Partners, L.P. ("NWCP").  Amended Complaint ¶7.

[28] *Burtch v. Opus, LLC (In re: Opus East, LLC)*, 528 B.R. 30, (Bankr. D. Del. 2015), *aff'd* 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd* 698 F. App'x 711 (3d Cir. Sep. 28, 2017) (citing *In re Emerson Radio Corp.*, 173 B.R. 490, 493 (D.N.J. 1994), *aff'd* 52 F.3d 50 (3d Cir. 1995); *In re Reichmann Petroleum Corp.*, 364 B.R. 916, 921 (Bankr. E.D. Tex 2007)).

Debtor nor does it allege that NWC is in the direct chain of parent and subsidiary corporations directly owning the Debtor's shares.[29] However, the Amended Complaint alleges that New Water (which is defined to include NWC), as an architect of the LBO Transaction, formed the Worth Entities, implying that New Water *indirectly* owns or controls a substantial amount of the Debtor's equity.[30]

At this stage, the Amended Complaint is sufficient to support an inference that NWC is an insider of the Debtor.  The motion to dismiss the preference claim will be denied.

3.   Counts VI through XI – Avoidance and Recovery of the Closing Fee, Consulting Agreement, and Consulting Fees under Bankruptcy Code § 544 and Delaware Fraudulent Transfer Law 6 Del. C. § 1304 and § 1305.

Counts VI through XI of the Amended Complaint seek the avoidance and recovery of the Consulting Agreement, the Consulting Fees, and the Closing Fee as fraudulent transfers pursuant to Bankruptcy Code § 544 and Delaware Uniform Fraudulent Transfers Act, 6 Del. C. § 1304 and § 1305 (the "Fraudulent Transfer

---

[29] Amended Complaint, ¶¶ 107-109.

[30] Amended Complaint, ¶¶ 98, 110.   The Court also notes that the Amended Complaint's allegations further support an inference that NWC may be a non-statutory insider of the Debtor. "Courts focus on three factors to determine if an entity is a non-statutory insider of the debtor: (1) the closeness of the relationship between the transferor and the transferee, (2) the degree of influence the transferee exerts over the transferor, and (3) whether the transactions were arms-length." *Burtch v. Opus LLC (In re Opus East, LLC)*, 528 B.R. 30, 93 (Bankr. D. Del. 2015) (citing *OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 523-24 (Bankr. D. Del. 2006)).  "One-sided transactions and the ability to coerce the debtor into entering into transactions that are not in its best interests are evidence of a relationship that is too close." *Id.* (citing *Shubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.)*, 554 F.3d 382, (3d Cir. 2009)).  The Amended Complaint alleges that New Water installed its own partners across the Worth Entities as officers and directors, with significant amount of overlap, and specifically names those overlapping officers and their roles. Amended Complaint, ¶¶ 117-124. The Complaint further claims the New Water partners were directly involved in and controlled the Debtor's day-to-day operations, including financing, budgeting, strategy, and operations. Amended Complaint, ¶ 120.

Claims"). The Amended Complaint alleges that Worth Intermediate and NWC

entered into the Consulting Agreement on the LBO Transaction Date, which

required Worth Intermediate to pay NWC an annual fee equal to the greater of

(i) $350,000 and (ii) 4% of EBITDA for the applicable fiscal year.[31] The Amended

Complaint also describes the Closing Fee as a payment of $400,000 in connection

with the LBO Transaction.[32]

The Defendants argue for dismissal of the Fraudulent Transfer Claims

because the Amended Complaint does not identify the entity that transferred the

Closing Fees and Consulting Fees to the Defendants, thereby failing to allege that

the fees were made by or were property of the Debtor. The Trustee responds that

the Complaint alleges that the funds used to pay the Closing Fee came from the

Niagara/Key Bank Loan or the Monroe Loan, which were obligations of the Debtor,

secured by liens on the Debtor's assets.[33] The Trustee also asserts that success on

the first three counts of the Amended Complaint (alleging substantive

consolidation, piercing the corporate veil, and collapsing the LBO transactions) will

provide an additional basis to support the claim that the Closing Fee and

Consulting Fees transferred the Debtor's property to the Defendants. When

considered with the first three Counts and drawing all inferences in the light most

favorable to the Plaintiff, the Amended Complaint provides sufficient factual

---

[31] Amended Complaint, ¶¶ 83-84.
[32] Amended Complaint, ¶ 95. This paragraph alleges the payment was made to NWCP, although it also defines the payment as the "NWC Closing Fee" and the Consulting Agreement (attached as an exhibit to the Defendants' Motion to Dismiss) provides for payment of the closing fee to NWC, not NWCP. The Court infers from the foregoing that the Closing Fee was allegedly paid to NWC but, going forward, the Trustee may provide more evidence to clarify this fact.
[33] Amended Complaint, ¶¶ 72-82; ¶¶ 88, 95.

allegations to support the Trustee's claim that the Closing Fee and Consulting Fees transferred the Debtor's property.

The Defendants also argue that the Amended Complaint fails to allege the existence of a creditor at the time the Closing Fee was paid to provide the Trustee with standing under Bankruptcy Code § 544.[34]  The Trustee argues that the Amended Complaint alleges that unsecured creditors generally were harmed by the transfers.[35]  For purposes of a Rule 12(b)(6) motion, courts generally do not require a trustee to plead the existence of an unsecured creditor by name, although the trustee must ultimately prove such a creditor exists.[36]  The Fraudulent Transfer Claims will not be dismissed at this stage for failing to identify specific unsecured creditors.

a.    <u>Claims for avoidance of transfers made with actual intent to defraud</u>

Delaware law provides for avoidance of a transfer made or obligation incurred with "actual intent to hinder, delay or defraud any creditor of the debtor."[37]  Because direct evidence of intent is typically unavailable, plaintiffs may demonstrate intent circumstantially with "badges of fraud."[38]  "Badges of fraud are

---

[34] Section 544(b) provides in pertinent part that a trustee "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."  11 U.S.C. § 544(b).

[35] Amended Complaint ¶¶ 20-24; 169.

[36] *Pardo v. Avanti Corp. Health Sys., Inc. (In re APF Co.)*, 274 B.R. 634, 639 (Bankr. D. Del. 2001); *See also Michaelson v. Farmer (In re Appleseed's Intermediate Holdings, LLC)*, 470 B.R. 289, 301 (D. Del. 2012).

[37] 6 Del. C. § 1304(a)(1) and (b), § 1307(a).

[38] *SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, 2016 WL 1165634, *4 (Bankr. D. Del. 2016) (citing *Off'l Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 545 (Bankr. D. Del. 2009)).

'circumstances so commonly associated with fraudulent transfers that their

presence gives rise to an inference of intent.'"[39]

The Delaware statute provides a host of examples of the badges of fraud that

a court may consider:

> (1) the transfer or obligation was to an insider; (2) the debtor retained
> possession or control of the property transferred after the transfer;
> (3) the transfer was undisclosed or concealed; (4) before the transfer was
> made or obligation was incurred, the debtor had been sued or threatened
> with suit; (5) the transfer was of substantially all of the debtor's assets;
> (6) the debtor absconded; (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably
> equivalent to the value of the asset transferred or the amount of the
> obligation incurred; (9) the debtor was insolvent or became insolvent
> shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial
> debt was incurred; and (11) the debtor transferred the essential assets
> of the business to a lienor who transferred the assets to an insider of the
> debtor.[40]

Case law teaches that the presence or absence of any single badge of fraud is

not conclusive.[41] The analysis is not a check-the-box inquiry, and a court may

consider other factors relevant to the alleged fraudulent transaction.[42] Moreover, in

bankruptcy, the heightened pleading standard of Fed.R.Civ.P. 9(b) may be relaxed

and interpreted liberally where a trustee, or a trust formed for the benefit of

creditors, is asserting the fraudulent transfer claims.[43]

---

[39] *Id.* (quoting *Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005)).

[40] 6 Del. C. § 1304(b).

[41] *Syntax-Brillian*, 2016 WL 1165634 at *5.

[42] *Id.*

[43] *Syntax-Brillian*, 2016 WL 1165634 at *4 (citing *Fedders N. Am.*, 405 B.R. at 544).

The Trustee contends that the Amended Complaint now includes factual allegations that describe the following badges of fraud:

- Entering into the Consulting Agreement and paying the Closing Fee and Consulting Fees were transfers to insiders of the Debtor;[44]

- The Closing Fee, the Consulting Fees and the Consulting Agreement were part of the overall LBO Transaction, and, in the LBO Transaction, the Debtor granted blanket security interests in all its assets and incurred over $25 million in new debt without receiving anything close to reasonably equivalent value;[45] and

- the Debtor became insolvent shortly after the Closing Fee and the Consulting Fees were made or the obligations under the Consulting Agreement were incurred.[46]

The Defendants argue that the Amended Complaint's allegations continue to be conclusory and general and cannot support claims to avoid transfers based on actual fraud. In particular, the Defendants argue that the allegations of lack of reasonably equivalent value are implausible because (i) the Trustee does not claim that NWC failed to provide valuable services under the Consulting Agreement in exchange for the fees, and (ii) the Trustee's allegation that the fees are "exorbitant" is unsupported when the alleged facts demonstrate that the Closing Fee paid to

---

[44] As discussed in the prior section about the preference claims, the Amended Complaint alleges that the New Water Defendants were architects of the LBO Transaction and formed the Worth Entities, implying that New Water indirectly owns or controls the post-LBO Debtor. Amended Complaint, ¶¶ 98, 101. The Amended Complaint alleges that New Water installed its own partners across the Worth Entities as officers and directors, with significant amount of overlap, specifically naming those overlapping officers and their roles.  Amended Complaint, ¶¶ 117-124. The Amended Complaint further claims the New Water partners were directly involved in and controlled the Debtor's day-to-day operations, including financing, budgeting, strategy, and operations. Amended Complaint, ¶ 120.

[45] Amended Complaint, ¶¶ 81; 170-176.

[46] Amended Complaint, ¶¶ 155-169.

NWC for assisting Worth Intermediate in acquiring the Debtor was less than 1% of the total transaction value and 2% of the equity value in the LBO Transaction.

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."[47]  Here, the Amended Complaint contains specific factual allegations that support the Trustee's overall claim that the Worth Entities participated in the LBO Transaction knowing that it would leave the Debtor with so much debt that it would harm the Debtor's ability to pay unsecured creditors. For example, the Amended Complaint alleges that the LBO Transaction harmed the Debtor's financial condition, stating:

- Prior to the LBO Transaction, the Debtor had total indebtedness in the amount of $2,373,966.22.[48]

- Upon the closing of the LBO Transaction, the Debtor was obligated for over $25,000,000 in debt.[49]

- In the year ending December 31, 2014, the Debtor incurred $77,000 in interest and financial related expenses and had net sales of $76,581,000 and a positive net income of $1,686,000.[50]

- In the year ending December 31, 2015, the Debtor incurred $23,000 in interest and financial related expenses and had net sales of $78,507,000 and a positive net income of $1,398,000.[51]

- The staggering debt resulting from the LBO Transaction caused the Debtor's interest and financing related expenses to skyrocket to $1,760,000 in 2016 – an over five thousand percent (5,000%) increase

---

[47] *Paul v. Intel Corp. (in re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F.Supp.2d 404, 407 (D. Del. 2007) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)).
[48] Amended Compl. ¶ 155.
[49] Amended Compl. ¶ 158.
[50] Amended Compl. ¶ 156.
[51] Amended Compl. ¶ 157.

from the prior year, despite closing of the LBO Transaction occurring after approximately nine of the twelve months in that calendar year.[52]

- The Debtor operated at a net loss of $1,610,000 in 2016.[53]

- In 2017 the Debtor's interest and financing related expenses increased to $2,483,000.[54]

- The Debtor operated at a net loss of $9,317,000 in 2017, the first calendar year after the LBO Transaction.[55]

- The Debtor had approximately $12 million in cash and cash equivalents at the end of 2014.[56]

- Th Debtor had almost $5 million in cash and cash equivalents at the end of 2015.[57]

- The Debtor's cash dwindled to $445,000 in cash and cash equivalents at the end of 2016.[58]

- The Debtor's cash position at the end of 2017 was lower than its cash position at the end of 2016.[59]

- The LBO Transaction amounted to a windfall payout to the Debtor's Former Equity Holders, with the Debtor picking up the tab in the form of $25 million in debt and leaving the Debtor's creditors at risk, maintaining a bleak amount of operating cash in relation to its significant post-LBO Transaction debt obligations, and pledging all of its assets as security for the newly-incurred debt.[60]

---

[52] Amended Compl. ¶ 160.
[53] Amended Compl. ¶ 161.
[54] Amended Compl. ¶ 162.
[55] Amended Compl. ¶ 163.
[56] Amended Compl. ¶ 164.
[57] Amended Compl. ¶ 165.
[58] Amended Compl. ¶ 166.
[59] Amended Compl. ¶ 167.
[60] Amended Compl. ¶ 169.

- As part of the LBO Transaction, the Debtor granted blanket security interests to Monroe and First Niagara and left the Debtor with over $25 million in debt, while the only cognizable benefits that the Debtor received in exchange were (i) satisfaction of $2,373,966.22 of prior debt and (ii) a cash infusion of $1,058,178.92[61]

The Court concludes that the Amended Complaint contains sufficient factual allegations related to badges of fraud to prevent dismissal of the Trustee's claims to avoid transfers made with actual intent to hinder, delay or defraud creditors. The Motion to Dismiss the actual fraud claims in Counts VI and VIII will be denied.

    b.   <u>Claims for avoidance of transfers made with constructive intent to defraud</u>

The Trustee's claims in Counts VI, VII, VIII and IX also seek to avoid transfers made, and obligations incurred, based on finding constructive intent to defraud creditors. Section 1304(a)(2) of the Delaware Fraudulent Transfer law provides that a transfer made or obligation incurred by a debtor is fraudulent if the debtor made the transfer or incurred the obligation:

> Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>     a. Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>     b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[62]

Section 1305(a) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange

---

[61] Amended Compl. ¶ 175(a).
[62] 6 Del. C. § 1304(a)(2).

for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.[63]

Claims of constructive fraud are not subject to the particularity requirement of Fed.R.Civ.P. 9(b) but, instead, are evaluated under the notice pleading requirement of Fed.R.Civ.P. 8(a)(2).[64] "The Trustee must do more than simply recite statutory elements, but he need only state facts with sufficient particularity to provide the defendant fair notice of the charges against him." [65]

The Defendants again argue that the allegations about lack of reasonably equivalent value and insolvency in the Amended Complaint are too conclusory or general to support the claims asserted.  However, for the same reasons described above in the discussion about sufficient allegations to support badges of fraud that relate to a lack of reasonably equivalent value or insolvency, the Court concludes that the Amended Complaint contains sufficient factual allegations to prevent dismissal of the claims in Counts VI, VII, VIII and IX related to constructive fraudulent intent.

---

[63] 6 Del. C. § 1305(a).

[64] *Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*, 582 B.R. 846, 856 (Bankr. D. Del. 2018).

[65] *Id.* (citing *Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 BR. 488, 495 (Bankr. D. Del. 2010)).

CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss the

Amended Complaint will be denied.  An appropriate Order will issue.


FOR THE COURT:



BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE


Dated: March 10, 2026